## F. S. WHELAN & SONS *v.* UNITED STATES (No. 4687) [1]

United States Court of Customs and Patents Appeals, February 18, 1952

*Kirkland, Fleming, Green, Martin & Ellis* (*Hammond E. Chaffetz, Chauncey P. Carter, Jr.,* and *E. Ladd Thurston, Jr.,* of counsel) for appellant.

*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue* and *Richard F. Weeks,* special attorneys, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, Appellate Term, rendered pursuant to its

[1] C. A. D. 482.

decision, Reap. Dec. 7995, reversing the judgment of the trial court, rendered pursuant to its decision, Reap. 7864, involving reappraisement No. 179628–A/1745, and finding the dutiable value to be the appraised value under section 402 (c) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938 [19 U. S. C. 1402 (c), as amended], as applying to birch plywood imported from Canada into the United States.

Involved here is the proper interpretation of section 402 (c), *supra.* The pertinent provisions of section 402 provide as follows:

(a) Basis: For the purposes of this Act the value of imported merchandise shall be—
   (1) The foreign value or the export value whichever is higher;

    \*      \*      \*      \*      \*      \*      \*

(c) Foreign value: The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The merchandise was entered at the invoice price which was the wholesale price of the importation in carload quantities. The appraiser advanced the value to the wholesale price of the importation in quantities of less than 5,000 square feet.

The single judge of the trial court held the importation to be dutiable at the entered value. The government applied for a review of that decision under authority of section 501 of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938.

The Customs Court (Appellate Term) held the merchandise to be properly dutiable at the wholesale price in quantities of under 5,000 square feet and accordingly reversed the judgment of the single judge. The importer has appealed to this court.

Appellant introduced exhibits in evidence as follows:

Appellant's Exhibit No. 1 consists of affidavits of Mr. Philip A. Sargeant, General Manager of International Plywoods Limited, exporter herein. Appellant's Exhibit No. 2 is a photostat copy of a recapitulation of shipments of birch plywood, the commodity herein involved, during a typical period by the Canadian manufacturer whose product is involved, for a period from October to December, 1947.

Appellee introduced in evidence, as appellee's Collective Exhibit No. 3, a certified copy of the report of Customs Agent T. G. Duncan, dated Montreal, Canada, March 12, 1948, File 2–1800, consisting of fourteen pages, together with exhibits attached thereto numbered 6, 7, 8, 9, 10 and 12 with reference to Report 2–1800; also, appellee's Exhibit No. 4, which is a memorandum copy of letter signed by Frank Dow, Acting Commissioner of Customs, dated December 27, 1948, File No. 332.1, addressed to Messrs. Kirkland, Fleming, Green,

Martin & Ellis; also, appellee's Collective Exhibit No. 5, which is a report from A. A. McPhetres, Treasury Representative, dated at Montreal, Canada, August 16, 1948; and File 2–1800 consisting of three sheets and one exhibit which consists of three pages.

It was stipulated that the period October, 1947, through December, 1947, covered by appellant's Exhibit No. 2, is representative of the period during which the particular importation mentioned in this case was made.

It was agreed by the parties that the principal market in Canada for this merchandise at the time of exportation involved was Montreal, Canada; that there were no higher export values; that foreign value was the proper basis for appraisement; and that "if the Court should find the usual wholesale quantity is in quantities of less than carload lots under 5,000 square feet, then the appraised valuation should be affirmed as representative of the foreign value under the provisions of section 402 (c) of the Tariff Act of 1930 and * * * if the Court should find that carload lots are the usual wholesale quantity, then the entered value represents the foreign value * * *."

It will be readily seen that the only issue involved herein is as to the "usual wholesale quantities" in which the merchandise was freely offered for sale in Canada for home consumption.

The various exhibits disclose that International Plywoods, Ltd., the exporter of the involved merchandise, is engaged in the business of manufacturing birch plywood which it offers for sale, and does sell, both in Canada and in the United States; that at about the time of exportation of the shipment here involved it freely offered for sale and sold its birch plywood for domestic consumption at three different price scales, depending upon the quantity purchased; that irrespective of the grade, size, or thickness ordered, and regardless of whether the purchaser was a distributor, dealer, or consumer, the lowest price per thousand feet was charged to all who bought the birch plywood in carload quantities; that a price substantially 15 per cent higher than the carload price was charged for quantities of more than 5,000 square feet, but less than carload quantities; and, that a price approximately 20 per cent higher than the carload price was charged for quantities of under 5,000 square feet.

The affidavit of Mr. Sargeant (appellee's Exhibit No. 1) states that the exporter company has directed its sales and distribution efforts primarily to the sale and distribution of plywood in carload quantities; that such sales have been the most efficient operation and have resulted in the lowest possible distribution cost per unit; that sales in less than carload quantities are not the usual sales of the company but are incidental sales in the ordinary course of business and were made largely as an accommodation to its customers.

The record contains copies of authorized price lists issued by the

exporter company effective as of June 14, 1947, and July 6, 1947, showing prices of its birch plywood when purchased in carload quantities, in less than carload quantities, minimum quantity 5,000 square feet, and in less than carload quantities and under 5,000 square feet. The record conclusively establishes that sales in each of the above-mentioned quantities were wholesale sales, and that it was the regular course of the exporter's business to make such sales.

Appellee's Exhibit No. 2 contains a tabulation of all sales for home consumption made by the exporter during the three-month period in 1947, which, though subsequent to the date of exportation, has been agreed upon as accurately typifying the exporter's sales practices as of the date of exportation of the merchandise here involved. This exhibit lists 268 sales during the period selected. Of these sales 59 were in carload quantities, 39 were in less than carload quantities but over 5,000 square feet, and 170 were in less than carload quantities and under 5,000 square feet. There were 209 sales in less than carload quantities and only 59 sales of carload quantities. Sales in less than carload quantities were an almost daily occurrence.

The record also discloses that the 59 sales in carload quantities amounted to a much larger percentage of the total sales in both total quantity and total value than the sales in less than carload quantities.

We think the record establishes that the offers for sale and the sales of less than carload quantities did not constitute an unusual or incidental method of sales in the ordinary course of business or that such offers and sales were made as an accommodation to appellant's customers. On the contrary we think such sales in less than carload quantities were sales in the usual wholesale quantities, in the ordinary course of trade which were freely offered for sale, for home consumption, to all purchasers.

In *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093, this court, discussing section 402 (c), stated:

That the major portion, or greatest number, of sales or offers for sale in a wholesale quantity should be deemed to be the usual wholesale quantity is well established. * * *

Appellant contends that Congress in defining foreign value intended that there could be several usual wholesale quantities and that the price to be taken for assessing duties should be the price for the quantity in the foreign market which corresponded to the quantity imported. Appellant contends further that, assuming that there can be only one usual wholesale quantity, the "Greatest Numbers of Transactions Rule" (as set out in *Jenkins Brothers* v. *United States, supra,* and the many other cases referred to below) is merely a presumption intended to govern where it is not inconsistent with other relevant factors or where other evidence is lacking.

If section 402 (c), *supra,* were to be construed as above contended

by appellant, it might well result in imported merchandise, identical in every respect, and sold at the same time, in the same market of the country of exportation, to different importers, and exported at the same time, being subjected to different rates of duty, even though all costs of preparing, packing, etc., were the same.

We do not think that was intended by Congress. We think Congress intended that there be but one usual wholesale quantity and that the same rate of duty should apply to all importations of identical merchandise purchased from the same exporter in the same market at the same time.

This issue has been before this court several times.

In *United States* v. *V. M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912, the merchandise involved was miniature dictionaries which were sold by the manufacturer and exporter at a basic list price, less varying discounts, depending upon the quantity purchased. The manufacturer stated the bulk of his merchandise was sold at a price of 1 mark, less 75 per centum discount, which represented the entered value. Referring to that testimony this court stated:

* * * From this statement, we think it is apparent that he meant that the major portion of their dictionaries were sold at a price of one German mark, less a discount of 75 per centum. This is not the equivalent of saying that the "major portion of the sale or offers for sale" were at the basic price of one German mark, less a discount of 75 per centum, nor have we been able to find any evidence of record to that effect.

For all that appears of record, the major portion of the manufacturer's dictionaries may have been sold to three or four purchasers, in wholesale quantities of 10,000 or more, at the basic price of one German mark, less a discount of 75 per centum; whereas, the rest of its dictionaries may have been sold in wholesale quantities to hundreds of buyers, at the basic price of one German mark, less discount, varying from 33⅓ per centum to 70 per centum, depending upon the quantities purchased.

In that case the court then held:

* * * that the language "in the usual wholesale quantities" was intended "to refer to a major portion of the sales or offers for sale," in wholesale quantities, of imported merchandise, subject, however, to the further limitation hereinbefore indicated that although the word "quantities" must be applied in the plural, in the sense hereinbefore stated, the statute does not contemplate two or more "usual wholesale quantities" having two or more market values or prices. On the contrary, the statute does contemplate, we think, but one—*the usual*—having but one "market value" or "price * * * at which such or similar merchandise is freely offered for sale to all purchasers," at the time of exportation to the United States. [Italics the court's]

In addition to the *Minkus* and *Jenkins Brothers* cases *supra*, as noted by the Appellate Term, this rule has been followed or discussed with approval in the following cases:

*Adolph Goldmark & Sons Corp.* v. *United States*, 22 C. C. P. A. (Customs) 358, T. D. 47378; *United States* v. *G. Gennert, Inc.*, 22 C. C. P. A. (Customs) 374, T. D. 47388; *United States* v. *Livingston & South-*

ard, Inc., 23 C. C. P. A. (Customs) 214, T. D. 48060; *United States* v. *Rodier, Inc.*, 23 C. C. P. A. (Customs) 336, T. D. 48196; *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308; *Lovell Dressel Co., Inc.*, v. *United States*, 25 C. C. P. A. (Customs) 64, T. D. 49064; *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129; *Semon Bache & Co.* v. *United States*, 28 C. C. P. A. (Customs) 166, C. A. D. 140; *American Shipping Co.* (*General Electric X-Ray Corp.*) v. *United States*, 29 C. C. P. A. (Customs) 250, C. A. D. 198; and *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341.

The number of wholesale sales in less than carload quantities under 5,000 square feet far exceeded those in any other quantity bracket. Under the authority of the above cited cases, it is our opinion that such sales were the usual wholesale quantity in which the instant merchandise was freely offered for sale in the ordinary course of trade, for home consumption, to all purchasers in the principal markets of the country from which exported. Therefore, the judgment of the Customs Court, Second Division, Appellate Term, is *affirmed*.